IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:22-cv-483

JAMES JORDAN, CBS INSURANCE, )
INC., EMPLOYERS FIRST CHOICE )
INSURANCE SERVICES INC., JAMES )
HELBIG, BRET FIELDS, TARGET, )
INC., LENNY MILLER, CHRIS )
BENKENDORF, NATIONAL )
BENEFITS GROUP MIDWEST LLC, )
MICHAEL TOLOMEI, THOMAS )
FLETCHER, CERTIFIED FINANCIAL )
SERVICES INC. f/k/a FLETCHER & )
ASSOCIATES LTD., AMERICA'S )
HEALTH CARE/RX PLAN AGENCY, )    DEFENDANT'S BRIEF IN
INC., MICHAEL NORDQUIST, )    SUPPORT OF MOTION TO
CONSOLIDATED FINANCIAL )    DISMISS PURSUANT TO
GROUP, LLC, BENEFITS FOR )    FEDERAL RULES OF CIVIL
AMERICA INSURANCE SERVICES, )    PROCEDURE 12(b)(6) AND
INC., and PLAN AMERICA )    12(b)(7)
FINANCIAL SERVICES, INC. on )
behalf of themselves and all others )
similarly situated, )
                    )
        Plaintiffs, )
                    )
   v. )
                    )
GREG E. LINDBERG, )
                    )
      Defendant. )

## STATEMENT OF THE NATURE OF THE MATTER

Plaintiffs suit against Lindberg is the *third* class action complaint filed by these

same Plaintiffs arising from the same alleged non-payment of commissions. Plaintiffs'

shotgun litigation approach is apparently because Plaintiffs believe they will be unable to

recover from either Preferred Financial Corporation, LLC ("Preferred") or Colorado

1

27794337v2 92132.150.01

Bankers Life Insurance Company ("CBL"). As such, Plaintiffs seek to disregard corporate law and recover from Greg Lindberg, who Plaintiffs contend is the ultimate owner of both Preferred and CBL.

Plaintiffs' approach fails because Plaintiffs have no legitimate claims against Lindberg. For instance, Plaintiffs allege Mr. Lindberg breached a contract with Plaintiffs, despite the fact that Plaintiffs readily concede that the only contracts which they allege are with Preferred. Plaintiffs have not sufficiently pleaded unjust enrichment or quantum meruit. In fact, records from Plaintiffs' own filings demonstrate that Lindberg could not have benefitted from Plaintiffs' supposed efforts, as he had no control over CBL premiums, nor did he have control over payment of Plaintiffs' allegedly-owed commissions. Likewise, Plaintiffs are not entitled to pierce the corporate veil, because they have failed to adequately plead factual support for such a remedy. Finally, even if Plaintiffs' claims were viable, the case should be dismissed due to Plaintiffs' failure to add CBL as a necessary party.

## STATEMENT OF THE FACTS AND PROCEDURAL POSTURE

Plaintiff filed their class action complaint against Preferred (the "Preferred Case") on October 22, 2021. The Preferred Case is currently pending in the United States District Court for the Middle District of North Carolina as Cause No. 1:21-CV-914, titled *James Jordan, et al. v. Preferred Financial Corporation, LLC.*

On June 1, 2022, Plaintiffs filed a Motion to Intervene in a mattered styled *Mike Causey, Commissioner of Insurance of North Carolina v. Southland National Insurance Corporation, Southland National Reinsurance Corporation, Bankers Life Insurance*

2

*Company, Colorado Bankers Life Insurance Company*, Case No. 19-cv-008664, in the General Court of Justice Superior Court Division of Wake County North Carolina (the "Rehabilitation Case"). [Doc. 11-1]. In its Motion to Intervene, Plaintiffs sought to file suit against Colorado Bankers Life Insurance Company due to CBL's alleged failure to pay Plaintiffs for commissions related to sales of insurance policies. *Id.* The Court in the Rehabilitation Case granted Plaintiffs' motion, allowing Plaintiffs to file suit against CBL, but immediately stayed the case. [Doc. 11-2].

Next, on June 23, 2022, Plaintiffs filed another suit against Greg Lindberg, alleging that Lindberg breached contracts with Plaintiffs by failing to pay Plaintiffs for the same unpaid commissions complained of in the Preferred and CBL cases.

## QUESTIONS PRESENTED

1.      Should the Court dismiss for failure to state a claim?

2.      Should the Court dismiss for failure to join CBL, which is necessary and indispensable party?

## ARGUMENT

**I.      The Complaint Should Be Dismissed Under Rule 12(b)(6).**

**A.      Governing Standard**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of

3

27794337v2 92132.150.01

a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd*., 591 F.3d at 255 (citations omitted).

The 12(b)(6) standard for dismissal requires the articulation of facts that, if true, demonstrate a claim that the plaintiff may plausibly be entitled to relief. *Giacomelli*, 588 F.3d at 193 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility" and therefore must be dismissed. *Id.* (internal quotation marks omitted).

Ordinarily, only the four corners of the complaint and documents attached thereto may be considered in ruling on a motion to dismiss. However, exceptions to this rule exist. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint").

Thus, the Court may take judicial notice of public records, including court records, when ruling on a motion to dismiss. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (explaining that "[t]he most frequent use of judicial notice of ascertainable facts is in

4

27794337v2 92132.150.01

noticing the content of court records"); *Brown v. Edmonds*, No. 7:12-CV-00267, 2012 U.S. Dist. LEXIS 90093, 2012 WL 2526735, at *2 (W.D. Va. June 29, 2012) (taking judicial notice of state court records sua sponte to determine that the statute of limitations barred a pro se inmate's claims). The Court may also consider documents referred to, but not attached to Plaintiffs' Complaint. *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D.Md. 2001); *accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994).

**B.    Plaintiffs fail to sufficiently allege breach of contract.**

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Plaintiffs have failed to plead facts sufficient to indicate the existence of a valid contract with Lindberg. Likewise, Plaintiffs fail to allege a breach by Lindberg of any contract. For these reasons, Plaintiffs' breach of contract claim must be dismissed.

**1.    There is no contract between Plaintiffs and Lindberg.**

Because the face of Plaintiffs' complaint fails to allege the existence of a valid contract with Lindberg any purported claim for breach of contract must be dismissed. *See Jaffer v. Nat'l Caucus,* 296 F. Supp. 2d 639, 643 (M.D.N.C. 2003) (granting motion to dismiss breach of contract claim where complaint "failed to show the existence of a contract, an essential element of [plaintiffs] common law claim"), *aff'd in part and appeal dismissed in part*, 108 F. App'x 107 (4th Cir. 2004).

Nowhere in the Complaint do Plaintiffs allege that any individual Plaintiff entered into a contract with Lindberg in his individual capacity. Instead, the Complaint is quite

5

clear that any alleged contract was between Plaintiffs and Preferred. *See Compl*. ¶ 144

("There exist valid and enforceable contracts between Plaintiffs/the class members and

PFC for the payment of commissions in exchange for the sale of insurance products.").

Plaintiffs do not even allege that Lindberg was a direct beneficiary of a contract. *See e.g.,*

*Id.*, ¶¶ 10-24 (each Plaintiff "was duly authorized to sell insurance policies issued by CBL

pursuant to a contract with PFC for the benefit of PFC and CBL" – not Lindberg).

It is well settled that a plaintiff cannot assert contract-based claims without first

satisfying the most fundamental requirement of such actions: the existence of a contract

with the defendant. *Northwestern Nat. Ins. Co. of Wisconsin v. FMC Corp.,* 845 F. Supp.

2d 697, 703 at n.3 (W.D.N.C. 2012). "To withstand a motion to dismiss for failure to state

a claim in a breach of contract action, the plaintiff's allegations must [] show it was in

privity of contract [with the defendant]." *Lee Cycle Center, Inc. v. Wilson Cycle Center,*

*Inc.*, 545 S.E.2d 745, 750 (N.C. Ct. App. 2001). Dismissal is proper when it is clear that

the named defendant was not party to a contract with the plaintiff. *Edgerton v. Oliver*, 749

S.E.2d 112 (N.C. Ct. App. 2013).

Not only does Plaintiffs' Complaint demonstrate an absence of privity between

Plaintiffs and Lindberg, but the Complaint also directly points to a contract with a party

other than Lindberg with whom Plaintiffs' claims lie. Compl. ¶ 36 ("Plaintiffs and all others

similarly situated *had a direct contractual relationship with PFC* to sell CBL Policies.")

(emphasis added).

Indeed, Plaintiffs' own contracts demonstrate no relationship with Lindberg but

rather with PFC. In conjunction with the Preferred Case, Plaintiffs have produced the

6

27794337v2 92132.150.01

general agent agreements between Preferred and Plaintiffs.[1] Each contract states that it is between each Plaintiff and Preferred, not Lindberg. Exhibits A – J. Plaintiffs have wholly failed to allege the existence of a contract between any of them and Lindberg, as such, Plaintiffs' breach of contract claim should be dismissed.

### 2. Plaintiffs failed to allege any breach by Lindberg.

To allege a breach of contract, Plaintiffs must allege facts demonstrating a breach of an agreement by Lindberg. *See Claggett v. Wake Forest Univ.*, 126 N.C.App. 602, 608, 486 S.E.2d 443, 446 (1997) ("To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that *defendant breached the terms thereof*, the facts constituting the breach, and that damages resulted from such breach." (emphasis added)).

Here, there are no allegations that Lindberg breached any contract with any one of the Plaintiffs. Rather, Plaintiffs allege that it was Preferred who "stopped paying Plaintiffs and the class members the commissions that they had earned and were owed." Compl. ¶ 147.[2] And that "PFC's failure to pay commission to Plaintiffs and the class members constitutes a material breach of those contracts." *Id.*, at 149. Plaintiffs make no allegations that Lindberg breached any agreement. This is reason enough to dismiss Plaintiffs' claim for breach of contract.

---

[1] Plaintiffs have failed to produce any contract between Preferred and Plaintiff Michael Tolomei and America's Health Care Rx.

[2] In other parts of their Complaint Plaintiffs allege that both "CBL and PFC stopped paying commissions," however, there is no allegation regarding any breach by Lindberg.

7

27794337v2 92132.150.01

In fact, Plaintiffs' only reference to Lindberg in pleading breach of contract is that he "is responsible for fulfilling PFC's obligations as its sole owner." *Id.*, at ¶ 151. However, it is hornbook law that "shareholders are not personally liable for the acts of the corporation." *BNT Co. v. Baker Precythe Development Co.*, 151 N.C. App. 52, 62, 564 S.E.2d 891, 898 (2002); *see also Sutton Woodworking Mach. Co., Inc. v. Mereen-Johnson Mach. Co.*, 328 F.Supp.2d 601, 605-06 (M.D.N.C. 2004) ("[T]he mere fact that one person or one entity owns a majority of the shares in a corporation, or all of the shares in a corporation, does not make the acts of the corporation the acts of the shareholder so as to impose liability on the shareholder for the acts of the corporation.").

Plaintiffs have failed to allege a breach of contract, so their claims must be dismissed.

### 3.    Lindberg had no ability to control commission payments at the time of the alleged breach.

Moreover, even if Lindberg did owe contractual duties and even if Plaintiffs had properly pleaded the claim, Plaintiffs' Complaint demonstrates that there could not have been a breach by Lindberg. Plaintiffs' claims of breach are based on the alleged fact that, "[i]n or around July of 2019, Plaintiffs, along with a large group of other insurance agents/agencies across the country, were, suddenly and without warning, blocked from receiving commissions that were due to be paid on an ongoing basis." However, the record demonstrates that, at that time, it was Rehabilitator in charge of CBL that had control over payment of Plaintiffs' alleged commissions, not Lindberg. This is because CBL had

8

27794337v2 92132.150.01

already been placed in Rehabilitation. [Doc. 11-1, p. 20 ¶ 64][3] ("Beginning on or around June 27, 2019, CBL and PFC stopped paying commissioned properly due and owed to [Plaintiff].") *Id*., at p. 2 ¶ 2. ("On June 27, 2019, CBL consented to the entry of an Order of Rehabilitation, Order Appointing Receiver, and Order Granting injunctive Relief ("Order of Rehabilitation") with the Commissioner of Insurance of North Carolina, naming Mike Causey, in his official capacity as Commissioner of Insurance, as the Rehabilitator of CBL.").

The Order of Rehabilitation, in turn, authorized Causey to "take into his possession and control all property . . . bank accounts, savings accounts, monies, accounts receivable . . . and all other assets of any and all kinds and nature whatsoever belonging to [CBL], wherever located, and to conduct [CBL's] business and administer [CBL's] assets and affairs." Exhibit L, ¶ 3.

According to the Complaint, the first breach occurred "[i]n July of 2019, [when] PFC allegedly stopped paying Plaintiffs and the class members the commissions they had earned and were owed." Compl. ¶ 147. However, Lindberg could not have had control of CBL's assets and accounts on June 27, 2019 because the Order of Rehabilitation was entered at that time. Exhibit K. Thus, at the time of the alleged breach, Lindberg could not

---

[3] The Court may take Judicial Notice of Plaintiffs' Motion to Consolidate and Memorandum in Support [Docs. 10 and 11], as well as the Order of Rehabilitation, which is referenced in Plaintiffs' Complaint. See *Philips*, 572 F.3d at 180. A copy of Plaintiffs' Motion to Consolidate is attached hereto as Exhibit K. A true and correct copy of the Order of Rehabilitation, which is referenced in Plaintiffs' Complaint at paragraph 4, is attached hereto as Exhibit L.

27794337v2 92132.150.01

have controlled CBL's assets or bank accounts; and, thus, had no ability to pay commission payments.

Because Plaintiffs have alleged that no breach occurred until after Lindberg no longer had the ability to control commissions payments, there is no claim for breach of contract against Lindberg.

### C. The unjust enrichment and quantum meruit claims fail.

#### 1. The existence of express contracts preclude quantum meruit and unjust enrichment.

A claim for quantum meruit requires a plaintiff to allege that (1) services were rendered to the defendant; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously and both parties understood the services were rendered with the expectation of payment. *Wing v. Town of Landis*, 599 S.E.2d 431, 433 (N.C. Ct. App. 2004). However, when an express contract covers the same subject matter, a plaintiff cannot recover in quantum meruit. *Catoe v. Helms Constr. & Concrete Co.*, 372 S.E.2d 331, 335 (N.C. Ct App. 1988); *see also TSC Rsch., LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008) (adopting recommendation explaining that "a claim for quantum meruit can only exist in the absence of an enforceable, express contract").

Thus, "courts generally dismiss claims for quantum meruit on the pleadings when it is clear from the face of the complaint that there exists an express contract that controls." *Macregen, Inc. v. Burnette*, No. 1:19CV591, 2021 WL 2682050, at *5 (M.D.N.C. June 30, 2021) (internal citation omitted). Likewise, Courts dismiss claims for unjust enrichment

27794337v2 92132.150.01

when it is evident from the complaint that an express contract controls. *See Campbell v. CitiMortgage, Inc.*, No. 1:11CV1017, 2014 WL 4924251, at *12 (M.D.N.C. Sept. 30, 2014), *report and recommendation adopted*, No. 1:11CV1017, 2015 WL 127818 (M.D.N.C. Jan. 8, 2015) (dismissing unjust enrichment claim "where a contract exists that forms the basis for a claim"). Moreover, a corporate shareholder cannot become liable for an unjust enrichment claim when an express contract exists between a plaintiff and an entity owned by that person. *See Johnson v. Ross*, 419 F. App'x 357, 364 (4th Cir. 2011) ("Because Plaintiffs fail to demonstrate any benefit retained by Defendant other than that realized by virtue of his status as a shareholder, they cannot maintain a cause of action for unjust enrichment against him individually."); *see also Baker Const. Co., Inc. v. City of Burlington*, 2009 WL 3350747, at *6 (N.C. Ct. App. 2009) ("[T]his court has limited the scope of a claim of unjust enrichment such that the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party.").

Here, Plaintiffs have unequivocally maintained that "[t]here exist valid and enforceable contracts between Plaintiffs/the class members and PFC for the payment of commissions in exchange for the sale of insurance products." Compl. ¶ 144; *see also* Compl. ¶¶ 49, 53, 58, 63, 67, 72, 76, 80, 85, 89, 93, 97, 103, 107, 111, 117, 125. This allegation is consistent across all three lawsuits. According to Plaintiffs, "PFC's failure to pay commissions to Plaintiffs constitutes a material breach of those contracts." *Id.* at ¶ 149.

Thus, as alleged, there is no dispute that a contract exists which governs Plaintiffs' alleged entitlement to commissions. As such, Plaintiffs' quantum meruit and unjust enrichment claims must be dismissed.

27794337v2 92132.150.01

### 2. The Complaint and record demonstrate that Lindberg was not enriched by Plaintiffs.

To state a claim for unjust enrichment under North Carolina law, a plaintiff must allege that: (1) one party conferred a benefit upon the other party; (2) the benefit was not conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances; (3) the benefit was not gratuitous; (4) the benefit was measurable; and (5) the defendant consciously accepted the benefit. *JPMorgan Chase Bank, N.A. v. Browning*, 750 S.E.2d 555, 559 (N.C. Ct. app. 2013) (emphasis and citation omitted). Thus, the mere fact that one party was enriched at the expense of another, without more, does not amount to a claim of unjust enrichment. *Butler v. Butler*, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015). Instead, a benefit must have been conferred on the defendant "under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefit[ ] received." *Id.* at 336-37 (citation omitted).

Here, Plaintiffs have failed to plead that any benefit was conferred on Lindberg directly, or that he conspicuously accepted any benefit. Compl. ¶¶ 152-155 (no mention of a benefit conferred). In fact, according to the Plaintiffs, the only parties that "benefitted" as a result of Plaintiffs' sales of insurance policies were Preferred and CBL. Compl. ¶¶ 10-24 ("Plaintiff . . . negotiated, sold, and serviced numerous CBL Policies *for the benefit of CBL and PFC.*" (emphasis added)).

Moreover, the facts demonstrate that Lindberg has not benefitted from Plaintiffs' sale of CBL policies, because Lindberg has no control or access to CBL's bank accounts

27794337v2 92132.150.01

or assets, pursuant to the Rehabilitation Order. Exhibit L, ¶ 3. Thus, any benefit conferred onto CBL after June 27, 2019, has, in no way, benefitted Lindberg. *See* Compl. ¶2 ("In or around *July of 2019*, Plaintiffs, along with a large group of other insurance agents/agencies across the country, were, suddenly and without warning, blocked from receiving commissions that were due to be paid on an ongoing basis." (emphasis added)).

Plaintiffs fail to allege a benefit conferred on Lindberg for which Plaintiffs were not compensated, as such, their claim for unjust enrichment must be dismissed.

### D. Plaintiffs Have Not Adequately Pled Allegations to Pierce the Corporate Veil.[4]

Disregarding the corporate form is not to be done lightly. *Green v. Freeman*, 749 S.E.2d 262, 270 (N.C. 2013). It should be allowed only in a "few instances" because "proceeding beyond the corporate form is a strong step: Like lightning, it is rare and severe." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 666 S.E.2d 107, 112 (N.C. 2008). The fact that a parent entity is the sole shareholder of a subsidiary, or that the related entities share employees, executives, and board members, is insufficient to render the parent corporation or shareholders liable for the actions of its subsidiary. *B-W Acceptance Corp. v. Spencer*, 149 S.E.2d 570, 576 (N.C. 1966).

To pierce the corporate veil, Plaintiffs were required to plead facts that established that Lindberg and Preferred are "one in the same." *Id.* at 437. Thus, Plaintiffs would have had to alleged facts showing: (1) Lindberg had control of Preferred amounting to complete

---

[4] Lindberg applies North Carolina Veil Piercing Law, but the result would be the same under Colorado law – the choice of law provided for in the Contract. *See Contractors Heating & Supply Co. v. Scherb*, 163 Colo. 584, 586-87 (1967).

27794337v2 92132.150.01

domination with respect to the transaction at issue; (2) he used this control to commit a wrong, or to violate a statutory or other duty in contravention of Plaintiffs' rights; and (3) the wrong or breach of duty proximately caused an injury to Plaintiffs. *Id.* at 114. Plaintiffs could have tried to demonstrate control through allegations of "inadequate capitalization, failing to follow corporate formalities, complete domination of the [company] by another, or excessive fragmentation of a single enterprise into separate corporate entities," although "[n]o one factor is determinative." *Estate of Chambers v. Vision Two Hosp.*, 2013 NCBC 52 ¶ 24 (N.C. Bus. Ct. Nov. 21, 2013).

To survive dismissal Plaintiffs must make sufficient factual allegations that would entitle them to disregard the corporate form of Preferred for which they wish to pierce the veil. *See e.g.*, *Sysco Charlotte, LLC v. Naik*, No. COA18-1037, 2019 N.C. App. LEXIS 696, at *12 (Ct. App. Aug. 20, 2019). The allegations cannot be "bare legal conclusions," such as allegations that "the principals exercised complete dominion and control" over subsidiaries, but rather must be supported by factual allegations evidencing such control. *Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC*, 2012 NCBC 51, 38, 2012 NCBC LEXIS 52, *16, 2012 WL 4714497.

Plaintiffs fail to plead any facts to support a claim for veil piercing. In fact, although Plaintiffs make vague and conclusory references to supposed corporate abuse, there are no factual allegations regarding how Lindberg used Preferred or CBL for wrongful purposes. *See, e.g.*, Compl. ¶ 3 (Lindberg's "use of corporate entities to maintain this ownership was not a legitimate business purpose, it was a mere instrumentality which he attempted to use as a protective shield. . ." ), ¶ 35 ("Upon information and belief, PFC . . . [and CBL] are

14

27794337v2 92132.150.01

merely shell companies which have been used by Lindberg to fund his personal lifestyle and enrich his other business ventures."), ¶¶ 160-68.

Other than bare legal conclusions made "on information and belief," Plaintiffs have not made any allegations of control by Lindberg over Preferred. *See, e.g.*, Compl. ¶ 3-6, 35, 160-68. Plaintiffs have not made a factual allegation of undercapitalization, nor have they pleaded any facts to show that the companies are excessively fragmented nor that there is complete domination by one company over another.

Additionally, Plaintiffs fail to show a wrongful purpose or that Lindberg exercised "complete domination with respect to the transaction at issue." *Cooper*, 362 N.C. at 441, 666 S.E.2d at 114. Plaintiffs makes vague references to Lindberg using his alleged "control" for a wrongful purpose. Compl. ¶¶ 1, 4, 161-162. Yet Plaintiffs do not make any effort to explain how this control has effectuated non-payment of commissions. Conclusory statements like these allegations cannot support a veil piercing claim.

In fact, the record demonstrates that Lindberg had no ability to control payment of Plaintiffs' alleged commissions, because CBL had already been placed in Rehabilitation.[5] This alone evidences a lack of control preventing Plaintiffs from piercing the corporate veil.

Veil piercing is not available "when the complaint reveals on its face the absence of facts sufficient to make a good claim." *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC 28 ¶ 12 (N.C. Bus. Ct. Mar. 25, 2015). Plaintiffs' Complaint pleads a simple non-payment dispute;

---

[5] See analysis in Section B(3), above, regarding Plaintiffs failure to plead a breach, because Lindberg had no ability to control PFC or CBL.

27794337v2 92132.150.01

Plaintiffs are either entitled to commissions or they are not. Plaintiffs' remedy therefore lies with the entity with which they agreed to be paid. The Complaint fails to allege that Lindberg misused the corporate form. Therefore, dismissal with prejudice is proper.

### E. Veil Piercing is a remedy, not a separate cause of action.

Piercing the corporate veil is not a cause of action and should be dismissed when pled as such; rather, it is a "method of imposing liability on an underlying cause of action," *see Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F. Supp. 2d 472, 479 (W.D.N.C. 2003) (piercing the corporate veil is derivative). Thus, a veil piercing claim should be dismissed when there is no underlying cause of action on which it can be based. *See In re Glo-Tex Int'l, Inc.*, No. BKR. 07-06449-JW, 2010 WL 4916574, at *6 (Bankr. D.S.C. Nov. 30, 2010) ("[T]here does not appear to be an underlying cause of action against Debtor upon which Petitioners' veil piercing claim can proceed."); *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 WL 3738217, at *9 (E.D.N.C. July 29, 2014) (dismissing veil piercing "claim" when underlying cause of action is subject to dismissal). Because Plaintiffs' substantive claims for breach of contract, unjust enrichment, and quantum meruit should be dismissed, the Court should also dismiss Plaintiffs' veil piercing claim.

## II. Dismissal Is Appropriate Under Fed. R. Civ. P. 12(b)(7).

Rule 12(b)(7) provides that an action may be dismissed for failure to join a party under Rule 19. The movant bears the burden of showing that an absent party is necessary and indispensable pursuant to Rule 19. *Landress v. Tier One Solar LLC*, 243 F. Supp. 3d 633, 639 (M.D.N.C. 2017); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92

16

27794337v2 92132.150.01

(4th Cir. 2005). "The inquiry contemplated by Rule 19 is a practical one" which is left "to the sound discretion of the trial court." *Landress*, 243 F. Supp. 3d at 639 (quoting *Coastal Modular Corp. v. Laminators, Inc*., 635 F.2d 1102, 1108 (4th Cir. 1980)). The court must initially determine whether the absent party should be joined as a party to the action in accordance with the criteria set forth in Rule 19(a). *Id.*; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc*., 210 F.3d 246, 250 (4th Cir. 2000). If joinder of an otherwise-required party is not feasible, the court must then determine whether, under Rule 19(b), the absent party is indispensable such that the action cannot proceed in that party's absence. Fed. R. Civ. P. 19(b); *Landress*, 243 F. Supp. 3d at 639.

   CBL is a necessary party to this case. Under Federal Rule 19(a) a party is necessary if

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
  (i) as a practical matter impair or impede the person's ability to protect the interest; or
  (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) includes a list of factors for the court to consider in deciding whether the action should proceed or be dismissed. *Id.* Those factors include:

27794337v2 92132.150.01

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Moreover, Lindberg has a "substantial risk of incurring" conflicting legal obligations as the Court in the North Carolina State Court Action and this Court could reach different conclusions as Plaintiffs' entitlement to commissions. Such a risk "weighs heavily in favor of finding" that CBL is a necessary party. *See Nat'l Union Fire.*, 210 F.3d at 252; *Schlumberger Indus. v. National Sur. Corp.* 36 F.3d 1274, 1286-1287 (4th Cir. 1994).

Under Rule 19(a)(2), an unnamed party must be joined where "the result of the suit turns on" that party's conduct, such that "fairness dictates that . . . [they] be given the opportunity to protect its separate and distinct interest as a party." *Nat'l Union Fire*, 210 F.3d at 251 (parent company must be joined where dispute turned on parent company's conduct). While "[c]ourts are loath to dismiss cases based on nonjoinder of a party," they do so when "prejudice or inefficiency will certainly result" from non-joinder. *Owens-Illinois*, 186 F.3d at 441. Here, Rule 19(b)'s four factors confirm that prejudice and inefficiency will result without dismissal.

The Fourth Circuit recognizes that "the first and third factors under the rule—the extent to which a judgment rendered in the person's absence might prejudice the parties or would even be adequate—address much the same concerns as under the Rule 19(a)(2)

27794337v2 92132.150.01

analysis." *Owens-Illinois*, 186 F.3d at 441. That analysis occurs "pragmatically, in the context of the 'substance' of each case, rather than by procedural formula." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 120 (1968).

Circuit courts have had little difficulty concluding that where an absent party is alleged to be "more than an active participant" but in reality the alleged "primary participant," Rule 19(b) calls for dismissal. *See, e.g.*, *Freeman v. Nw. Acceptance Corp*., 754 F.2d 553, 559 (5th Cir. 1985) (collecting cases). The Fourth Circuit has said prejudice exists—and is "particularly strong"—where a suit "concerns [the absent party's] conduct." *Nat'l Union Fire*, 210 F.3d at 252-53. That is the case here.

Indeed, Plaintiffs contend that, "[t]he real issue is who will ultimately be responsible for paying the commissions," Preferred, CBL, or Lindberg. [Doc. 11, p. 4]. Moreover, Plaintiffs concede that "[t]here is a high risk of inconsistent adjudications of fact and law when there are main facts in common between separately litigated claims" and that "there is an inherent risk that Parties could receive inconsistent adjudications." [Doc. 11, p. 7].

There is no dispute that Plaintiffs have put the conduct, assets, and agreements of CBL squarely within the confines of this case. *See e.g.*, Compl. ¶ 37 ("PFC/CBL Contract Holders and the PFC/CBL Agents earn commissions based upon the payment of CBL Policy premiums paid by CBL Policyholders in accordance with commission schedules maintained by PFC/CBL"); ¶ 41 ("Although Plaintiffs generally communicated directly with CBL in the selling, soliciting, or negotiating of CBL Policies, in practice, PFC held itself out to the public, to agents/agencies, and to policyholders as doing business as CBL

19

27794337v2 92132.150.01

Case 1:22-cv-00483-CCE-JEP   Document 15   Filed 08/29/22   Page 19 of 23

or being one-of-the-same with CBL"); ¶ 44 ("PFC jointly employed the individuals who operated, controlled, and managed CBL.").

As is evident from the Complaint, it was not until after CBL was placed into rehabilitation that PFC allegedly stopped paying commissions to Plaintiffs. *See Id.*, at ¶ 51 ("In July of 2019, PFC stopped paying Plaintiffs and the class members the commissions that they had earned and were owed"); *see also* [Doc 11-1 p. 2 ¶ 2 ("On June 27, 2019, CBL consented to the entry of an Order of Rehabilitation, Order Appointing Receiver, and Order Granting injunctive Relief ('Order of Rehabilitation') with the Commissioner of Insurance of North Carolina, naming Mike Causey, in his official capacity as Commissioner of Insurance, as the Rehabilitator of CBL.")]. Thus, the reasons for any breach, the decision makers, and any withheld funds, rest entirely within the knowledge and possession of CBL.

Undoubtedly, Plaintiffs' claims against Lindberg "concerns [CBL's] conduct." *Nat'l Union Fire*, 210 F.3d at 252-53. In fact, it is impossible to separate CBL from the facts and circumstances which led to Plaintiffs' suit against Lindberg. CBL was clearly "more than an active participant" in the conduct at issue in this case. *See Freeman*, 754 F.2d at 559. Thus, factors 1 and 3 weigh in favor of dismissal.

Rule 19(b)'s other two factors confirm that the absence of CBL from this case warrants dismissal. First the Court must decide whether a judgment rendered in CBL's absence would be adequate. Courts have held that when a plaintiff seeks to pierce the corporate veil, the target of the piercing must be included as a party. *See e.g.*, *Landress*, 243 F. Supp. 3d at 645; *see also Action Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78, 81

27794337v2 92132.150.01

(1st Cir. 1982) (parent that played "substantial role" was indispensable party to action against subsidiary); *Armco Steel Corp. v. United States,* 490 F.2d 688, 690-91 (8th Cir. 1974) (joinder of parent corporations would be ordered if parents were required to participate in remedy); *Hanna Mining Co. v. Minnesota Power and Light Co.,* 573 F. Supp. 1395, 1399 (D. Minn. 1983) (parents and subsidiary were indispensable parties where both had identical interests in subject of action); *Heinrich v. Goodyear Tire and Rubber Co.,* 532 F. Supp. 1348, 1359 (D.Md. 1982).

Here, Lindberg is the ultimate target of Plaintiffs' veil piercing remedy, however, CBL is an indispensable party. That is because, in order to pierce the corporate veil to ultimately reach Lindberg, "it would have to be the case that the veil between each layer could be pierced." *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59-60 (D.D.C. 2007); *see also Soroof Trading Dev. Co. v. Ge Microgen, Inc.*, 283 F.R.D. 142, 151 n.9 (S.D.N.Y. 2009) (noting, in a case involving multiple corporate layers, that "it is necessary to pierce the corporate veil at each 'level or layer' of ownership").

Plaintiffs cannot simply skip to the top and Plaintiffs know as much. In fact, in the CBL Case, Plaintiffs seek first to pierce the corporate veil of Preferred to reach CBL. [Doc. 11-3, ¶ 164 ("The interest of justice requires the piercing of PFC's corporate veil and disregarding PFC's corporate form with respect to the contracts by and between Plaintiffs/the class members and PFC *such that CBL should be obligated under those contracts* for the payment of commissions") (emphasis added).]. CBL is indispensable for in order to determine Plaintiffs' veil piercing claim.

27794337v2 92132.150.01

Furthermore, in the CBL Case, Plaintiffs seek a declaration that "CBL is responsible for commissions owed under those contracts where PFC is a named party and obligated to pay commissions." [Doc. 11-3, ¶ 170]. Undoubtedly, there is a risk of inconsistent adjudication in CBL's absence, including the possibility for multiple recoveries by Plaintiff.

Finally, the court must consider "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Here, "[t]he state court is entirely capable of adjudicating this dispute." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 436 (4th Cir. 2014). North Carolina State Court is the "best forum to resolve the issues pertaining to this litigation, because, there, all the parties may resolve their issues in a single case rather than in a piecemeal fashion in this Court." *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 504 (D. Md. 2007). All of Plaintiffs' lawsuits show that their claims (including this lawsuit) are about CBL. Under Rule 19(a), CBL is a required party to the suit. Because CBL is unavailable, this Court should dismiss the claims under Rule 19(b).

## CONCLUSION

For the reasons set forth herein, Defendant Greg E. Lindberg, requests that the Court dismiss Plaintiffs' Class Action Complaint in its entirety for failure to state a claim upon which relief be granted. Defendant further asks that the Court dismiss Plaintiffs' Class Action Complaint for failure to add Colorado Bankers' Life Insurance Company as a necessary and indispensable party.

This the 29th day of August 2022.

22

27794337v2 92132.150.01

CONDON TOBIN SLADEK THORNTON
NERENBERG, PLLC

/s/ Aaron Z. Tobin
Aaron Z. Tobin
N.C. Bar No. 50019
atobin@condontobin.com
8080 Park Lane, Ste. 700
Dallas, Texas 75231
Telephone: 214.265.3800
Facsimile: 214.691.6311

FOX ROTHSCHILD LLP
Matthew Nis Leerberg
N.C. Bar No. 35406
mleerberg@foxrothschild.com
434 Fayetteville St., Ste. 2800
Raleigh, North Carolina 27601
Telephone: 919.755.8700
Facsimile: 919.755.8800

*Counsel for Defendant*

27794337v2 92132.150.01