# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**JAMES JORDAN**, et. al, on behalf of himself and all others similarly situated**,**

PLAINTIFFS**,**

v.

**GREG E. LINDBERG**,

DEFENDANT.

**Case No. 1:22-cv-483-CCE-JEP**

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

Defendant Greg E. Lindberg ("Defendant" or "Lindberg") is an owner, investor, and manager of several insurance companies. Since the summer of 2019, his actions have come under legal scrutiny, resulting in both criminal and civil litigation. Among the many persons harmed by his disreputable conduct are Plaintiffs: insurance agents and agencies who sold insurance policies for the ultimate benefit of Lindberg through at least two of his companies. Specifically, Plaintiffs were parties to contracts with Preferred Financial Corporation, LLC ("PFC"), who sold and serviced insurance policies issued by Colorado Bankers Life Insurance Company ("CBL"). Both CBL and PFC were owned, operated, and/or controlled by Lindberg as a part of his business conglomerate for his financial benefit. Per the terms of their contracts, Plaintiffs were compensated by PFC with commissions in exchange for selling and servicing CBL insurance policies. However, around July 2019, PFC suddenly stopped paying any sales commissions to Plaintiffs and the putative class members who had sold and serviced the policies. Plaintiffs now move the Court for an Order certifying this case as a class action on behalf of the class defined

below. By and through their undersigned counsel and pursuant to LR 7.3(a), Plaintiffs submit this Brief and accompanying materials, including declarations of Plaintiffs and their counsel, in support of their Motion for Class Certification (Doc. 19).

## I.  NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs and the putative class members were parties to agreements with PFC and earned commissions from selling and servicing policies issued by CBL. *See* Compl., Doc. 1, at ¶¶ 1-2. Although PFC owed Plaintiffs' their commissions, PFC failed to pay them when due, leaving Plaintiffs uncompensated for their work and damaged by PFC's breaches of contract. *Id.* Subsequent investigation and facts which have come to light[1] have indicated that Lindberg, as owner and decision-maker in PFC and/or CBL, acted to improperly enrich himself at the cost of others, including Plaintiffs and those similarly situated. Doc. 1 at ¶¶ 3-4.

Plaintiffs allege that PFC has no lawful basis to avoid paying commissions owed to Plaintiffs, and that by failing to make such payments, PFC has breached contracts with Plaintiffs and the putative class members or has otherwise been unjustly enriched to Plaintiffs' detriment in ways that are common and predominate over any individual issues affecting the class. *See* Doc. 1. Plaintiffs further allege that PFC's actions were controlled

---

[1] See May 19, 2022 WUNC and AP coverage concerning Hon. Graham Shirley's Order on Lindberg and his companies: https://www.wunc.org/news/2022-05-19/judge-nc-insurance-mogul-defrauded-companies-he-invested-in. *See also* Wall Street Journal "SEC Sues Insurance Executive, Alleging 'Massive' Fraud" (updated August 30, 2022) https://www.wsj.com/articles/sec-sues-insurance-executive-for-massive-fraud-11661897621.

2

and dominated by Lindberg, and that he lined his pockets with his ill-gotten gains. Doc. 1 at ¶¶ 5-6. Accordingly, Plaintiffs seek certification of a PFC/CBL Commissions Earners Class ("Proposed Class") as defined below.

## II.    STATEMENT OF FACTS

### A.   PFC, CBL, Lindberg, and Proposed Class Relationship

CBL was an insurance company organized, upon information and belief, to create, market, and issue four primary insurance policies: (1) a split fund life insurance policy with an annuity rider and an option to open a standalone annuity policy (known as a "security builder"); (2) a 10-year term life insurance policy with a critical illness rider; (3) an accident medical expense policy and an accidental injury policy; and, (4) a "final expense policy" to cover an insured's funeral expenses (hereinafter the "CBL Policies"). Doc. 1 at ¶ 32; Ex. 1, Plaintiffs' Declarations[2] (hereinafter, "Pltfs' Decs.") at ¶ 3.

CBL and PFC are both a part of the tangled web of companies owned directly or indirectly by Defendant Lindberg. Doc. 1 at ¶ 35.[3] Upon information and belief, CBL and PFC had a contractual relationship where PFC agreed to retain agents/agencies to sell CBL

---

[2] Plaintiffs have included as Ex. 1 to this Brief their Declarations as used and submitted in support of their Motion for Class Certification in the closely related case captioned "*James Jordan, et. al v. Preferred Financial Corporation, LLC*" and numbered 1:21-cv-914-CCE-JEP which is currently pending in front of this Court (hereafter "PFC Case"). *See* PFC Case Doc. 27, Ex. 1. Plaintiffs' Motion to Consolidate (Doc. 10) this case and the PFC Case is currently pending and briefing on the issue has not yet closed.

[3] *See e.g.*, Ex. 2; *Southland Nat. Ins. Corp., et al. v. Greg E. Lindberg et al.*, Wake County Superior Court, 19-cvs-013093, Judgement and Order (May 18, 2022) (providing an overview of the "layers of holding companies" that Mr. Lindberg acquired and used for improper purposes).

3

policies for CBL. PFC contracted with members of the Proposed Class to sell, solicit, and negotiate CBL life insurance and annuity contracts. Doc. 1 at ¶ 36; Pltfs' Decs. at ¶ 4. In practice, PFC held itself out to the public, to agents/agencies, and to policyholders as doing business as CBL or being one-and-the-same with CBL. Doc. 1 at ¶ 41. Because of the confusion this caused to policyholders, agents asked CBL and PFC on various occasions to be more careful in how the entities held themselves out to the public. Doc. 1 at ¶ 42. However, unbeknownst to Plaintiffs, this was not simple lazy mismanagement. Instead, it was part of a carefully orchestrated scheme by Lindberg to fund his personal lifestyle and enrich his other business ventures. Doc. 1 at ¶ 35. As a result, Lindberg undercapitalized PFC, leaving it with no assets to pay its liabilities, including the commissions at issue in this litigation. Doc. 1 at ¶ 6.

The Proposed Class had direct contractual relationships with PFC to sell CBL policies. *Id.* at ¶ 36; Pltfs' Decs. at ¶ 4. Pursuant to these contracts, the Proposed Class earned commissions in accordance with commission schedules maintained by CBL and PFC based upon the payment of CBL policy premiums. Doc. 1 at ¶ 37; Pltfs' Decs. at ¶ 5. The Proposed Class generally communicated directly with CBL in the selling, soliciting, and negotiating of CBL policies, but PFC and CBL used the names CBL and PFC interchangeably in both the contracts and prior payments with the Proposed Class: electronic deposits and checks would bear the name of either or both entities. Doc. 1 at ¶ 41.

4

Plaintiffs are insurance agents and agencies who sold insurance policies for the benefit of PFC within the three years prior to June 23, 2022, the date on which Plaintiffs filed their Complaint (Doc. 1). PFC stopped paying the commissions owed to Plaintiffs in July 2019. Pltfs' Decs. at ¶ 6. Although PFC stopped paying, Plaintiffs commissions continue to accrue and are tracked by PFC and/or CBL. Pltfs' Decs. at ¶ 9. In fact, counsel for the Rehabilitator[4] for CBL has confirmed that CBL and/or PFC have tracked that information and that CBL and/or PFC are going to produce documents (upon entry of a protective order) showing the amounts allegedly unpaid and owing and the people and entities to whom those amounts are allegedly owed. *See* Ex. 3, Declaration of Wes Camden in the PFC Case[5] (hereinafter "CBL Dec.") at ¶ 5. To date, Plaintiffs have not been paid the commissions that they are owed. Pltfs' Decs. at ¶ 8.

B. Litigation History

Plaintiffs filed this putative class action in this Court on June 23, 2022. Doc. 1. Plaintiffs' Complaint asserts a claim for breach of contract (count one), alternative claims of unjust enrichment (count two), and *quantum meruit* (count three), as well as a claim for piercing the corporate veil. *Id.* at ¶¶ 143-68. Lindberg filed his Motion to Dismiss on August 29, 2022. Doc. 14. Discovery has not yet started in this case.

---

[4] CBL is in a "rehabilitation" proceeding in North Carolina state court, which is essentially a receivership pending dissolution or reorganization of CBL.
[5] Mr. Camden is counsel for CBL and is the person with whom Plaintiffs' counsel has spoken regarding the forthcoming production of relevant documents sought in discovery in the PFC Case.

In the PFC Case, PFC alleged that the records related to the unpaid commissions at issue were turned over to CBL's Rehabilitator. In light of this and other reasons, Plaintiffs moved the Superior Court of Wake County, North Carolina for leave to intervene in the Rehabilitation to file a Complaint against CBL ("Motion to Intervene").

Plaintiffs' Motion to Intervene was granted. However, the Hon. Graham Shirley ordered that, upon service of the summons and complaint against CBL ("CBL Lawsuit"), the matter was immediately stayed absent further order of the court ("Stay Order"). Because the Stay Order prevented Plaintiffs from pursuing discovery in the CBL Lawsuit and PFC said that CBL had all of its documents, Plaintiffs served a subpoena on CBL on June 17, 2022 requesting the production of documents, including specific information about the identity of Proposed Class members. A copy of the subpoena served on CBL is attached to Plaintiffs' Motion for Protective Order in the PFC Case. PFC Case at Doc. 25-1.

After further investigation and details of Mr. Lindberg's dealings with his insurance companies (including CBL and PFC) came to light, Plaintiffs filed this suit to hold Lindberg accountable for Plaintiffs' unpaid commissions. After Plaintiffs filed this suit, they designated this Case as a related case and filed a Motion to Consolidate it with the PFC case, which is pending. Doc. 10. Defendant Lindberg has opposed that motion. *See* Doc. 16. The primary ground for his opposition is an argument that consolidation is inappropriate because the two cases are "on entirely difference procedural tracks." *Id.* However, Plaintiffs filed a Motion for Class Certification in the PFC Case on August 29,

2022 and have been stonewalled from obtaining any meaningful discovery to date. *See* PFC Case, Doc. 26. Plaintiffs now seek to certify this same class of persons against another common defendant in Mr. Lindberg and will be in substantially the same procedural position with the filing of this motion.

## III. ARGUMENT

### A. Standard of Review.

Class actions "afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions." *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 424 (4th Cir. 2003) (internal citation omitted). The Fourth Circuit has repeatedly announced that "federal courts should 'give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and … promote judicial efficiency.'" *Id.* (*quoting In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989) (internal citations omitted)). For a class to be certified, plaintiffs "must affirmatively demonstrate . . . compliance" with Rule 23. *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2017 WL 3730552, at *1 (M.D.N.C. Aug. 28, 2017) (Eagles, J.) (internal citations omitted).

Class certification decisions are left to the sound discretion of the Court. *See generally Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505, 507 (D.S.C. 2007). Because the Court has the discretion to revisit grants of class certification, any doubt regarding class certification should be resolved in the movant's favor, resulting in certification. *See, e.g.*,

7

*DeLoach v. Philip Morris Cos., Inc.*, 206 F.R.D. 551, 568 (M.D.N.C. 2002); *S.C. Nat. Bank v. Stone*, 139 F.R.D. 325 (D.S.C. 1991).

Rule 23 prescribes a two-part test for determining whether a proposed class action should be certified. First, the plaintiff must satisfy four threshold requirements: numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Second, the plaintiff must meet one of the three subsections of Fed. R. Civ. P. Rule 23(b), in this case, Rule 23(b)(3): predominance and superiority. *See* Fed. R. Civ. P. 23(b).

    B.  <u>The Proposed Class satisfies the requirements of Rule 23(a).</u>

Plaintiffs bring this action on behalf of themselves and the Proposed Class with the following definition:[6]

***PFC/CBL Commissions Earners Class:***

All persons or entities who (a) at any point during the three (3) year period of time preceding June 23, 2022 through the present, (b) had a contract with PFC related to CBL Policies, (c) earned commissions for the issuance, selling, or servicing of CBL Policies, (d) but have not been paid those commissions on behalf of themselves and the agents acting on their behalf.

Excluded from the Proposed Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) PFC, CBL, and any entity in which PFC or CBL has a controlling interest in PFC or CBL and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Proposed Class. Doc. 1 at 135-36.

---

[6] The proposed name of the class has been altered since the filing of the Complaint, but the class definition is materially the same as the class definition alleged in the Complaint. Doc. 1 at ¶ 135.

8

### 1. Rule 23(a)(1) – Numerosity is Satisfied

Numerosity is satisfied if the proposed class is so numerous that joinder of all members in a single action is impracticable. Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action." *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient). With (at a minimum) hundreds of Proposed Class members, each of whom are capable of being ascertained,[7] numerosity cannot be disputed. CBL Dec. at ¶¶ 4-6. Because CBL maintains a list of each individual/entity owed commissions along with the specific amount that is owed, both the Court and the Parties can and will readily ascertain the identities of each Proposed Class member and the specific amounts owed to them by simply referring to the list maintained by CBL. CBL Dec. at ¶ 5; Pltfs' Decs. at ¶¶ 6-9.

### 2. Rule 23(a)(2) – Commonality is Satisfied

Commonality requires the existence of "questions of law *or* fact common to the class." Fed R. Civ P. 23(a)(2) (emphasis added). Plaintiffs must "demonstrate that the class members have suffered the same injury" and that the injury can be redressable class-wide so as "to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*

---

[7] "Ascertainability" is an implicit "requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). The Court must be able to "readily identify the class members in reference to objective criteria...without extensive and individualized fact-finding or mini-trials." *Id.* (quotations omitted). Here, there can be no question that ascertainability is satisfied, as the class members are readily identifiable by PFC's records currently held by CBL. CBL Dec. at ¶¶ 4-6.

9

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation omitted). As the Fourth Circuit emphasized, "[t]he threshold requirements of commonality and typicality are not high. Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *Brown v. Nucor*, 576 F.3d 149, 153 (4th Cir. 2009). Rule 23(a)(2) requires only one common question for a potential class. *Cerrato v. Durham Pub. Schs. Bd. of Educ.,* No.1:16-CV-1431, 2017 WL 2983301, at *3 (M.D.N.C. March 17, 2017) (quoting *Haywood*, 109 F.R.D. at 507, "[i]ndeed, a single common question is sufficient to satisfy the rule.").

Here, there are questions of law and fact common to the Proposed Class that will drive the resolution of this case, whether through trial or otherwise. At least three central questions common to everyone in the Proposed Class are: (1) does Lindberg, individually and/or through his conduct piercing the corporate veil, have an obligation to pay earned commissions to the Proposed Class?; (2) has Lindberg, individually and/or through his conduct piercing the corporate veil, improperly withheld (or failed to pay) earned commissions to the Proposed Class?; and, (3) has Lindberg acted in a manner to pierce the corporate veil? The answer to those questions will resolve the central disputes in this case for everyone. *See Dukes*, 564 U.S. at 350 (commonality is satisfied when answers to common questions "will resolve an issue [] central to the validity of each [] claim[] in one stroke.").

On August 29, 2022, Lindberg filed his Motion to Dismiss (Doc. 14) in an attempt to prevent Plaintiffs' claims from going forward on the following primary arguments: (a)

10

Plaintiffs haven't sufficiently alleged the existence of any contract(s) or breaches thereto; (b) the *quantum meruit*/unjust enrichment claims fail because of the non-existence of contracts or a failure to show enrichment; and (c) Plaintiffs have not pled allegations necessary to pierce the corporate veil. Each of Lindberg's arguments in favor of dismissal apply equally to the entire class because his actions in structuring and controlling PFC/CBL—including the failure to pay commissions—and piercing the corporate veil applied uniformly to everyone in the Proposed Class. Thus, resolution will impact the entire Proposed Class in the same way. Other common questions include what Lindberg (and PFC/CBL) has been doing with the funds withheld from Plaintiffs and how the operational and managerial decisions to cease paying commissions were made. Essentially, all the principal legal and factual issues in this case are common ones. Accordingly, commonality is satisfied.

### 3. Rule 23(a)(3) – Typicality is Satisfied

Typicality under Rule 23(a)(3) "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (cited with approval in *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 344 (4th Cir. 1998)). Typicality does not require that all class members' claims be identical. *Id.*; *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 2000) (*citing Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993)). Instead, a class

11

representative need only demonstrate that their claims "arise from the same practices, and are based on the same theory of law, as the class claims." *Woodard*, 191 F.R.D.at 505; *see also Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995) (factual variations do not defeat certification when the claims are based on the same legal theory).

Plaintiffs' claims in this case arise uniformly from Lindberg's conduct related to structuring and conducting PFC and CBL's affairs to the detriment of the Proposed Class. Plaintiffs allege the same legal theories: that PFC was obligated to make commissions payments in and beyond July 2019, that PFC had no lawful basis to discontinue making such payments, and that this conduct was issued through and by its sole owner, Lindberg, whose conduct also pierced the corporate veil. Therefore, their claims are typical of those of the Proposed Class. In short, Plaintiffs' claims are the same as those of the Proposed Class.

### 4. Rule 23(a)(4) – Adequacy of Representation is Satisfied

Adequacy under Rule 23(a)(4) has two requirements. First, the plaintiff must be represented by adequate counsel. *Woodard*, 191 F.R.D. at 506 (citing *Cent. Wesleyan*, 6 F.3d at 183). "The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary." *Stone*, 139 F.R.D. at 330-331. Here, Plaintiffs' counsel are all skilled attorneys with extensive experience in complex litigation, consumer protection litigation, and class actions, and they have prior experience successfully litigating various types of class action lawsuits, including those where employees or contractors were wrongfully denied wages and/or commissions payments.

*See* Ex. 4, Declaration of Plaintiffs' Counsel Matthew E. Lee (hereafter, "Lee Dec.") at ¶ 4.

Second, the named plaintiff must not have interests antagonistic to those of the class. *Woodard*, 191 F.R.D. at 506 (*citing Barnett v. W.T. Grant Co.*, 518 F.2d 543, 546 (4th Cir. 1975)). None of the named Plaintiffs here have interests that are antagonistic to those of the Proposed Class. Each Plaintiff is owed commissions for the sale of insurance policies— no commissions were paid to them, just like no commissions were paid to all members of the Proposed Class that they seek to represent. Pltfs' Decs. at ¶¶ 2-9. Named Plaintiffs are highly motivated to pursue collection of these commissions. Pltfs' Decs. at ¶ 10. Further, Plaintiffs demonstrated their commitment to the Proposed Class by assisting their counsel in the litigation, understanding the nature of the case, reviewing the Complaint, gathering and producing documents, meeting with the undersigned attorneys, and providing a declaration in support of Plaintiffs' Motion for Class Certification. Lee Dec. at ¶ 10; Pltfs' Decs. at ¶¶ 10-11.

C.  The Proposed Class satisfies the requirements of Rule 23(b)(3).

In addition to satisfying the requirements of Rule 23(a), the Proposed Class satisfies Rule 23(b)(3).

*1.  Common Issues Predominate*

A class action may be certified when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and

13

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This predominance inquiry addresses "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It is not necessary for "each element of plaintiff['s] claims [to be] susceptible to classwide proof[;] only for "common questions [to] predominate over any questions affecting only individual class members." *Amgen*, 568 U.S. at 469 (internal quotation marks and alterations omitted). As the Fourth Circuit recently noted, "[t]he entire notion of predominance implies that the plaintiffs' claims need not be identical…" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir.), *cert. denied*, 140 S. Ct. 676, 205 L. Ed. 2d 440 (2019).

Thus, the predominance test "really involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis." *DeLoach*, 206 F.R.D. at 560. Further, predominance "focuses on the quality of common issues rather than just the quantity." *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 394 (M.D.N.C. 2015). The goal is to ensure that the defendant's common conduct "has sufficient bearing on the central issue in the litigation." *EQT*, 764 F.3d at 366.

Here, common issues for the Proposed Class predominate over individual issues. Before July 2019, PFC paid commissions to Plaintiffs and those similarly situated

14

according to commissions schedules and applicable contracts when due.[8] Beginning in July 2019, however, PFC stopped paying commissions to Plaintiffs when they became due. Pltfs' Decs. at ¶ 6. Lindberg's control and conduct in piercing the corporate veil is at the very center of the unpaid commissions. Both Lindberg's and PFC's liability will be proven through class-wide evidence, which reflects the amounts earned by Plaintiffs and the Proposed Class, how those amounts were calculated, the amounts not paid by PFC to the Proposed Class members, and whether (or how much) of the amounts not paid were retained by Lindberg or a shell company (or multiple) and used at his disposal. The Proposed Class members suffered PFC's failure to pay commissions earned at the exact same time, in the exact same way. Differences in the amounts of commissions due, or dates such commissions became due, are immaterial to whether the class should be certified. If, for some reason, an insurance agent or agency that contracted with PFC received their commissions payments around July 2019 or were subsequently paid, or if Lindberg can show that he did not control the actions of PFC/CBL with respect to any agent or agency, then those agents or agencies are simply not class members. Thus, if the failure to make earned commissions payments is a breach of contract or otherwise unlawful, and such failure to make payments was directed by Lindberg or benefitted Lindberg unlawfully, then all Proposed Class members have the same claim.

---

[8] This is not disputed by PFC (represented by the same counsel as Lindberg), which reiterated in its Answer in the PFC Case (Doc. 12) its contention that it "appropriately paid" Plaintiffs over the course of its relationships with Plaintiffs.

Any individual issues for the Proposed Class can be resolved efficiently and do not overwhelm the cohesiveness of the Proposed Class. A substantial number of contracts between Plaintiffs and PFC have already been reviewed and commissions payment schedules, and records pertaining to the sale and servicing of insurance policies can promptly be obtained [?] and reviewed to ascertain whether commissions are owed and, if so, how much is owed in each instance. Lee Dec. at ¶¶ 6-9. Indeed, CBL maintains records in the ordinary course of its business that reflect, to the penny, exactly how much in commissions each Proposed Class member is owed to date, which are due to be produced upon entry of a Protective Order. CBL Dec. at ¶¶ 5-6. These records maintained by PFC/CBL were relied upon by Plaintiffs and Proposed Class Members prior to July of 2019 and will be relied upon to determine the amounts currently owed. CBL Dec. at ¶¶ 4-6; Pltfs' Decs., at ¶¶ 5-9; Lee Dec. at ¶ 8-9. Moreover, to the extent Lindberg or PFC has any defense for the failure to make commission payments, such defenses would be uniform class-wide. Quite simply, this is a prototype class action.

However, it is premature at this stage to determine class membership: "[t]he goal is not to 'identify every class member at the time of certification,' [] but to define a class in such a way as to ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point." *Krakauer*, 925 F.3d at 658 (quoting *EQT*, 764 F.3d at 358). Post-certification, Plaintiffs will present to the Court a roster of those people and entities who should be included as Proposed Class

members, along with the information pertaining to the contracts at issue and commissions payments which accrued but have not been paid.[9]

The fact that Proposed Class Members will be entitled to different damages does not defeat predominance. "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance." *Gunnells*, 348 F.3d at 427-28; *see also Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("[T]he formula for damages was identical for all class members."). Damage calculations for the Proposed Class will be based upon materially identical formulas that lend themselves to class certification. All Proposed Class members have calculable damages based upon a percentage of the revenues from the CBL Policies they sold, and any differences in the formulas used are *de minimis* and calculated in real-time through CBL's business records. Lee Dec. at ¶ 10; Pltfs' Decs. at ¶¶ 7-9. All Proposed Class members have damages capable of class wide resolution formulaically, based on the same liability theory, without the need for individualized inquiry which would detract from the clear efficiency that class treatment will provide. *Id*.

## 2. *Class Treatment is Superior*

Superiority under Rule 23(b)(3) asks whether proceeding as a class action is superior to other available methods of resolution. Four factors are relevant: (a) the interests of class members individually controlling the prosecution or defense of separate actions;

---

[9] Counsel for Plaintiffs will meet and confer with Lindberg's counsel prior to this post-certification hearing to resolve any disputes as to class membership.

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Here, all superiority factors weigh in favor of class treatment. As to the first two factors, Plaintiffs' counsel is not aware of any other cases against Lindberg in North Carolina with similar allegations.[10] Absent a class action, the Proposed Class members would not have effective and efficient means of representation of their interests, which supports class certification here.

As to the third factor, it is far more desirable to concentrate the litigation as a class action. Given the uniformity of PFC's conduct in ceasing to pay earned commissions to Plaintiffs and Proposed Class members, and the likelihood that Lindberg controlled those decisions and/or implemented a policy directing the corporate entities to cease making commissions payments, the duplication of effort would increase burdens on all parties, create uncertainty for all parties, and waste judicial resources. Class treatment is superior where it would provide the defendant with finality and closure on the fundamental issue of whether the defendant's actions, policies, or procedures violate the law. *See Robinson v.*

---

[10] Of course, there are various actions pending against Lindberg as a result of his conduct relating to the use of insurance companies, holding companies, and their funds. Plaintiffs are not aware of a case of insurance agents or agencies suing for unpaid commissions on the same legal theories of this case.

*Nationstar*, *Inc.*; No. CV TDC-14-3667, 2019 WL 4261696, at *18 (D. Md. Sept. 9, 2019) (*citing Stillmock v. Weis Mkts., Inc.*, 385 F.App'x 267, 275 (4th Cir. 2010)).

There are no unique difficulties in managing this action as a class action. All of Plaintiffs' claims rest on common issues concerning PFC and Lindberg's conduct that should be fairly easily resolved through discovery. CBL is in possession of relevant documents in this case and confirms that specific evidence exists that reflects the specific amounts of commissions owed to each Proposed Class members to date. CBL Dec. at ¶ 4-6. Further, CBL and/or PFC has records of the contracts entered with Plaintiffs and the Proposed Class Members, which will be based on the same underlying formulas and contractual relationships across the Proposed Class. CBL Dec. at ¶ 4-6; Pltfs' Decs. At ¶¶ 5-9; Lee Dec. at ¶¶ 8-8. Any burden in compiling the list of affected Proposed Class members rests on Plaintiffs' counsel, who can present a list(s) of Proposed Class members, including the identification of any potential outliers, for the Court's review to confirm class membership. Accordingly, class treatment is the superior method for this litigation.

    D.  <u>If the Court determines any evidence is lacking such that it would prevent class certification at this juncture, Plaintiffs should be permitted to refile this motion following discovery.</u>

The Parties' Joint Rule 26(f) report has not yet been submitted and no deadline for class certification yet exists beyond Local Rule 23.1(d), which requires that Plaintiffs file a motion for class certification within 90 days of filing of their complaint. That rule provides that the Court may grant the motion or "may order postponement of the

19

determination pending discovery." As Plaintiffs have not yet responded to Mr. Lindberg's Motion to Dismiss (Doc. 14), no discovery has yet taken place in this case.

In the PFC Case, where discovery has begun, PFC has alleged that its books and records were maintained solely by Global Bankers Insurance Group, LLC ("GBIG"), and that GBIG was the management company for various insurance entities, including CBL. PFC also stated that all their records related to the commissions at issue were turned over to CBL's Rehabilitator. Plaintiffs filed a Motion to Intervene in the Superior Court of Wake County, North Carolina in order to file a complaint against CBL. Plaintiffs' Motion to Intervene was granted; however, given the Rehabilitation, a Stay Order was entered, prohibiting Plaintiffs from conducting discovery to obtain relevant documents in the state court action. However, CBL did not object to producing documents pursuant to the subpoena served on June 17, 2022. *See* Subpoena to CBL, Ex. 1 of Doc. 25 in PFC Case. Since then, Plaintiffs have diligently worked with CBL on the scope of the subpoena and the requested production. Plaintiffs' counsel understands that the process of gathering documents and relevant information has been protracted for several reasons, most notably because of the lack of persons associated with CBL with "historical knowledge" of where relevant documents and information are stored and maintained.

Ultimately, CBL (via the Rehabilitator) agreed to produce information about the identities of the Proposed Class members and the amounts of commissions owed to them. On August 3, 2022, counsel for the Rehabilitator confirmed that its production was ready. However, because that information contains personally identifiable information about the

identity of the Proposed Class members, CBL (reasonably) requested entry of a protective order prior to producing the information, to protect the privacy of the Proposed Class members. The undersigned drafted a Consent Motion for Protective Order along with a Consent Protective Order and, on August 9, 2022, sent to counsel for PFC. On August 23, 2022, after consistent follow-up attempts, counsel for PFC ultimately confirmed that it neither consents to nor opposes the Motion for Protective Order filed at PFC Case Doc. 25 (filed August 26, 2022).

Plaintiffs believe that they have produced more than sufficient evidence to warrant class certification. This is a prototype class action where the facts and surrounding circumstances regarding Lindberg's conduct and PFC's failure to pay are materially identical. However, in the alternative, should the Court find anything lacking in that regard, Plaintiffs request that this motion simply be denied without prejudice consistent with L.R. 23.1(b), and that they be permitted an opportunity to refile with additional evidence after they finally obtain all necessary documents from PFC, CBL, and Lindberg. Plaintiffs have diligently sought production of those documents and should not be penalized for the unusual procedural posture of the CBL rehabilitation proceeding and PFC's refusal to produce any of these documents itself. Moreover, without receiving relevant documents, Plaintiffs have not yet been able to obtain deposition testimony from relevant parties regarding any circumstances or potential defenses surrounding Lindberg's actions or PFC's failure to make required payments. Again, Plaintiffs believe they have satisfied their burdens at this stage, but to the extent the Court believes Plaintiffs need to demonstrate

more evidence supporting class certification, Plaintiffs request that this motion be denied without prejudice under L.R. 23.1(b) and that they be permitted an opportunity to refile it with additional evidence after they finally obtain documents and testimony from PFC, CBL, and Lindberg. A.

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs satisfy the requirements of Rules 23(a) and 23(b)(3) for the Proposed Class. Class certification is therefore appropriate, and Plaintiffs respectfully request that the Motion for Class Certification be granted in its entirety and that the Court enter an order certifying the PFC/CBL Contract Holders Class, appointing undersigned counsel as class counsel, and appointing the named Plaintiffs as class representatives.

Pursuant to LR 7.3(c)(1), Plaintiffs also request oral argument to fully address the complex legal and factual issues discussed within this Brief in Support of Plaintiffs' Motion for Class Certification.

[SIGNATURE PAGE TO FOLLOW]

This the 14th day of September, 2022.

/s/ Matthew E. Lee
Matthew E. Lee
N.C. State Bar No. 35405
Mark R. Sigmon
N.C. State Bar No. 37762
Jeremy R. Williams
N.C. State Bar No. 48162
Jacob M. Morse
N.C. State Bar No. 52302
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 West Morgan St.
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
mlee@milberg.com
msigmon@milberg.com
jwilliams@milberg.com
jmorse@milberg.com


Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
**MAGINNIS HOWARD**
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com


*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH RULE 7.3(d)(1)

I, the undersigned counsel, hereby certifies that on the foregoing brief does not exceed 6,250 words as limited by Local Rule 7.3(d)(1). The word count excludes the case caption, signature lines, cover page, and required certificates of counsel. In making this certification, the undersigned has relied upon the word count of the word-processing system used to prepare the brief.

/s/ Matthew E. Lee
Matthew E. Lee

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing *Brief in Support of Plaintiffs' Motion for Class Certification* with the Clerk of Court using the CM/ECF system, which sent notification of the filing to all counsel of record.

This the 14th day of September, 2022.

/s/ Matthew E. Lee
Matthew E. Lee