IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES JORDAN, et al., on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:21-CV-914 and 1:22-CV-483 |
| PREFERRED FINANCIAL CORPORATION, LLC, and GREG E. LINDBERG, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs are insurance agents and agencies who allege they have contracts with the defendant Preferred Financial Corporation, LLC, under which Preferred pays them commissions for insurance policies sold to the policyholders by the agents and issued by Colorado Bankers Life Insurance Company (CBL). They allege that Preferred stopped paying these commissions when CBL was placed into rehabilitation and is liable to them for breach of contract. They also contend that the defendant Greg Lindberg is responsible for Preferred's breach of contract under a piercing-the-corporate-veil theory. The plaintiffs move to certify a class of all agents who have similarly not been paid since CBL was placed into rehabilitation, to appoint the plaintiffs' counsel as class counsel, and to appoint the named plaintiffs as class representatives. The motions for class certification, with modifications to the class definition, will be granted.

## I. Background

In the case against Preferred, the plaintiffs move to certify a class including:

> All persons or entities who (a) at any point during the three (3) year period of time preceding October 21, 2021 through the present, (b) had a contract with PFC related to CBL Policies, (c) earned commissions for the issuance, selling, or servicing of CBL Policies, (d) but have not been paid those commissions on behalf of themselves and the agents acting on their behalf.

No. 21-CV-914 (hereinafter *Preferred*), Doc. 26 at 1. In the case against Mr. Lindberg, the proposed class definition is almost identical, except for a date change to June 23, 2022. *See* No. 22-CV-483 (hereinafter *Lindberg*), Doc. 20 at 8.[1] The dates in the proposed class definitions generally match up to three years before the particular suit was filed; the plaintiffs filed the Preferred case on October 22, 2021, *Preferred* Doc. 2 at 1, and the Lindberg case on June 23, 2022. *Lindberg* Doc. 1 at 27.

At a hearing on the motion, the plaintiffs agreed that the date should be changed to reflect more precisely their claim that commission payments were paid until, and only stopped after, CBL went into rehabilitation in late June 2019. *See Lindberg* Doc. 11-1 at 2 ¶ 2 (showing that CBL consented to rehabilitation on June 27, 2019); *Preferred* Doc. 2 at ¶ 1 (plaintiffs' claim that commission payments stopped in or around July 2019); *Lindberg* Doc. 31 ¶ 2 (same).

These two cases were consolidated for discovery and trial on December 13, 2022. *Preferred* Doc. 42; *Lindberg* Doc. 43.

---

[1] While the plaintiffs' motion for class certification lists "October 21, 2021" as the relevant date, *Lindberg* Doc. 19 at 1, the accompanying brief clarifies that the date in the motion should be "June 23, 2022." *Lindberg* Doc. 20 at 5, 8.

## II. Federal Rule of Civil Procedure 23

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, the plaintiffs "must affirmatively demonstrate [their] compliance" with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Rule 23 does not set forth a mere pleading standard." *Id*. The plaintiffs "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*.

As a threshold matter, Rule 23 requires the proposed class members to be readily identifiable and the proposed class representatives to be members of the proposed class. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (recognizing an "implicit threshold requirement" that class members be readily identifiable); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("A class representative must be part of the class." (cleaned up)); *see generally* Fed. R. Civ. P. 23(a). The plaintiffs must then establish the four enumerated requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Finally, the plaintiffs must establish that the case fits into at least one of the three subsections of Rule 23(b). *Comcast Corp.*, 569 U.S. at 33. Here, the plaintiffs rely on Rule 23(b)(3), which requires that common issues predominate and that a class action is the superior method of litigation.

The Court must rigorously assess the proffered evidence, *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 359 (4th Cir. 2004), but has "wide discretion" in evaluating whether the Rule 23 requirements have been met. *Ward v. Dixie Nat. Life Ins.*

3

*Co.*, 595 F.3d 164, 179 (4th Cir. 2010); *see also Windham v. Am. Brands, Inc.*, 565 F.2d 59, 65 (4th Cir. 1977); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them" as to the "certification and management of potentially cumbersome" class actions). A district court can "craft more definite class definitions, thus eliminating or mitigating" problems with the plaintiffs' proposed class. *EQT Prod. Co.*, 764 F.3d at 369; *Hawkins v. Cohen*, 327 F.R.D. 64, 78 (E.D.N.C. 2018) (quoting same).

Where necessary, the Court must "resolve a genuine legal or factual dispute relevant to determining the requirements" of Rule 23. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008); *see also EQT Prod. Co.*, 764 F.3d at 358 (noting that "a court should consider merits questions to the extent that they are relevant" to class certification (cleaned up)). "The likelihood of the plaintiffs' success on the merits, however, is not relevant to the issue of whether certification is proper." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

### III. Discussion

#### A. Threshold Requirements

As a threshold matter, the plaintiffs must show that they are members of the proposed class and that the members of the proposed class are readily identifiable and ascertainable "in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Neither Preferred nor Mr. Lindberg dispute that the plaintiffs have met the threshold requirements.

4

The plaintiffs are members of the proposed class because they are insurance agents and agencies who have not received the commissions allegedly owed under their contracts with Preferred since CBL went into rehabilitation. The class members are also readily identifiable through Preferred's records. *Preferred* Doc. 27-3 at ¶¶ 4–5; *Lindberg* Doc. 20-3 at ¶¶ 4–5.[2] These documents include "the names and other identifying information of purported class members" and "data on the amount each named plaintiff and purported class member is owed under their agreement" with Preferred. *Preferred* Doc. 27-3 at ¶ 5; *Lindberg* Doc. 20-3 at ¶ 5. Thus, the class members are readily identifiable and ascertainable in reference to objective criteria like business records.

### B. Rule 23(a) Requirements: Numerosity, Commonality, Typicality, and Adequacy

Rule 23(a) has four requirements: numerosity, commonality, typicality, and adequacy. "These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (cleaned up).

#### 1. Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[n]o specified number is needed to maintain a class action," *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021), "a class

---

[2] Preferred's records are largely in the possession of CBL and others, as counsel for Preferred stated at the December 1, 2022 hearing and as generally confirmed by counsel for CBL. *See also Preferred* Doc. 27-3 at ¶ 4; *Lindberg* Doc. 20-3 at ¶ 4.

5

of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia*, 7 F.4th at 234 (cleaned up).

Because of delays in obtaining Preferred's records from third parties, the plaintiffs initially had difficulty estimating the size of the proposed class, and the defendants disputed numerosity. But the spreadsheets recently obtained from CBL show that there are more than 2,500 agents that are owed commissions on CBL policies. *Preferred* Doc. 40-1 at ¶¶ 2–3. Since a class of 2,500 is so numerous that joinder would be impracticable, the plaintiffs have satisfied numerosity.

### 2. Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up). "[E]ven a single common question will do," *id.* at 359 (cleaned up), "but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350).

Commonality is satisfied here. At the hearing, the defendants agreed that there are some questions common to the class. For Preferred, these questions include: (1) did Preferred stop paying all commissions when CBL went into rehabilitation? (2) if so, was this a breach of Preferred's contracts with the class members? Mr. Lindberg's liability also depends on the answers to these questions.

6

Although contract claims are not usually certified for class actions unless they are form contracts, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 156 (D. Md. 2022) (collecting cases), whether Preferred breached the contracts here can likely be resolved with class-wide proof because of the unusual facts. There is nothing to indicate that Preferred has different reasons for not paying that are specific to the individual plaintiffs. As the plaintiffs' evidence makes clear, they were all paid what they were owed on time until after CBL went into rehabilitation, at which time all payments stopped. *See Preferred* Doc. 27-1 (declarations from 12 plaintiffs); *Lindberg* Doc. 20-1 (same). Preferred stopped paying, the plaintiffs say, because it did not have any money and had been undercapitalized by Mr. Lindberg. *Lindberg* Doc. 31 at ¶¶ 57–63. The plaintiffs' theory of the case is congruent with these facts: Preferred stopped paying everyone, at the same time, and for the same reason, in breach of every class member's contract. This is unlikely to "require examination of individual contract language." *In re Marriott*, 341 F.R.D. at 156 (cleaned up).

For Mr. Lindberg, there are additional common factual questions related to piercing Preferred's corporate veil, including: (1) did Mr. Lindberg's control of Preferred amount to complete domination? (2) did he undercapitalize Preferred? (3) did he comply with corporate formalities? (4) were his entities excessively fragmented? *See Estate of Hurst ex rel. Cherry v. Moorehead I, LLC*, 228 N.C. App. 571, 577–78, 748 S.E.2d 568, 574 (2013) (discussing elements and factors that courts consider when piercing the corporate veil). Answering these questions will likely resolve the veil-piercing issues

7

that are central the plaintiffs' case in "one stroke."  *Wal-Mart*, 564 U.S. at 350; *EQT Prod. Co.*, 764 F.3d at 360.

### 3. Typicality

To satisfy the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members."  *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up).  "The typicality requirement goes to the heart of a representative parties' ability to represent a class," and the named plaintiffs' interest in prosecuting their cases "must simultaneously tend to advance the interests of the absent class members."  *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006).

Here, the claims asserted by the named plaintiffs are the same as the claims of the proposed class members and arise from the same course of conduct by Preferred—that Mr. Lindberg undercapitalized Preferred, thus causing Preferred to have insufficient funds to pay the plaintiffs' commissions when due after CBL went into rehabilitation. The claims of the named plaintiffs are based on the same legal theories as the claims of the unnamed proposed class members—that the failure to pay constituted a breach of contract, or in Mr. Lindberg's case, that the plaintiffs are entitled to relief for breach of contract by piercing the corporate veil.

The defendants dispute typicality because two of the seventeen named plaintiffs have contracts with mandatory arbitration provisions and forum-selection clauses.

*Preferred* Doc. 39 at 3 (citing Doc. 39-1 and 39-4); *Lindberg* Doc. 25 at 11–12 (citing Doc. 25-1 at 4–13, 38–47).[3] By themselves, "possible arbitration or other contractual bar of some class members" does not defeat class certification. *See In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 350 (D. Md. 2012) (cleaned up). More importantly, here this argument raises only a speculative possibility; the defendants have not sought to compel arbitration or to enforce the forum-selection clause as to any named plaintiff, nor do they allege how many class members have these types of provisions. Even if the issue arises as to a class member, the issue is likely appropriate for resolution in group fashion; the plaintiffs proffer an argument, for example, that Preferred has already waived all such provisions. *See Preferred* Doc. 40 at 5; *Lindberg* Doc. 29 at 7.

"Representative claims must be typical of, but not identical to, the claims of the class members." *McKenzie v. CDA, Inc.*, No. 19-CV-213, 2021 WL 1220620, at *4 (W.D.N.C. Mar. 31, 2021) (cleaned up); *see also Deiter*, 436 F.3d at 467 (noting the plaintiffs' claims and the class members' claims need not "be perfectly identical or perfectly aligned"). The claims of the named plaintiffs here qualify.

### 4. Adequacy of Representatives

Rule 23 requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," as well as "competency and conflicts of class counsel." *Amchem*

---

[3] If there are any other differences in the contracts that would affect the defendants' liability, the defendants did not identify them in the briefing.

*Prods., Inc. v. Windsor*, 521 U.S. 591, 625 & 626 n.20 (1997); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Plaintiffs' counsel can competently represent the class. Resumes for the two law firms, Milberg Coleman Bryson Phillips Grossman, PLLC and Maginnis Howard, PLLC, show that plaintiffs' counsel are experienced in complex litigation and class actions. *Preferred* Doc. 27-4 at 6–29; *Lindberg* Doc. 20-4 at 6–29. There is no evidence of any conflict, and the defendants do not dispute the adequacy of counsel.

The named plaintiffs are also adequate representatives. They are motivated to pursue the claims and have demonstrated commitment to the case. *Preferred* Doc. 27-4 at 4 ¶ 10; *Lindberg* Doc. 20-4 at 4 ¶ 10. To the extent that any of the named plaintiffs are subject to a potentially valid and enforceable arbitration or forum-selection clause, those named plaintiffs can represent the interests of class members in similar positions. The remaining named plaintiffs can represent class members without such clauses. If necessary, subclasses are a possibility. *See Peters v. Aetna Inc.*, 2 F.4th 199, 243–44 (4th Cir. 2021) (discussing case-management subclasses) (citing Fed. R. Civ. P. 23(c)(5), (d)).

### C. Rule 23(b)(3) Requirements: Predominance and Superiority

The plaintiffs must also demonstrate that the proposed class satisfies one of the subsections under Rule 23(b). Here, the plaintiffs seek to certify the class under Rule 23(b)(3).

Rule 23(b)(3) is a "common vehicle" to "seek damages for widespread wrongful conduct." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019). The plaintiffs must demonstrate that "questions of law or fact common to class members

10

Case 1:22-cv-00483-CCE-JEP    Document 44    Filed 12/21/22    Page 10 of 17

predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 provides a non-exclusive list of factors to consider when deciding whether a class action satisfies predominance and superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

The predominance requirement is satisfied when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *see also* Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one . . . [that] is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). In practice, the predominance requirement asks whether a trial meant to resolve class-wide issues is manageable or whether it is likely to devolve into a series of mini-trials. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328–29 (4th Cir. 2006).

Here, issues common to the class will predominate over individual questions. The plaintiffs have presented a logical method for class-wide proof of the existence of the

11

contracts, supported by the testimony of the named plaintiffs and Wes Camden, the attorney for CBL. And while breach of contract can present individualized issues, the operative question here is almost certain to be whether CBL's rehabilitation status excused Preferred from paying the commissions. The plaintiffs have not asked to certify the unjust enrichment or quantum meruit claims as to either defendant. And the amended class definition will limit any individual questions, as it will only include claims beginning on the date that CBL went into rehabilitation. Any class member who wants to pursue equitable claims or who contends Preferred did not pay commissions owed for the time outside the class period will be able to opt out.[4]

The individual issues raised by the defendants in the briefing relate to the arbitration clauses, the forum selection clauses, and the presence of individualized proof issues. But as discussed *supra*, the arbitration and forum-selection issues are largely speculative and, in any event, do not predominate. The plaintiffs have produced evidence that is likely to allow them to prove the existence of these contracts with class-wide proof, given the way Preferred maintained its business records.[5] Calculation of the plaintiffs' damages will be straightforward because there are business records showing

---

[4] Explicitly addressing this in the class notice will ensure that class members understand the approach class counsel will take and that they can opt out if they do not want to pursue payment of unpaid commissions on the theory and in the manner proposed by class counsel.

[5] The defendants complain that not all named plaintiffs have produced written contracts and that the absence of written contracts will raise individual questions. But they cite no law that these contracts must be in writing, and given the way the plaintiffs propose to prove the existence of the contracts—through the business records maintained in a computer system that essentially proves the contracts by the fact that the records of commissions owed are maintained—any such potential problems are speculative.

12

how much Preferred owes each class member to date. *Preferred* Doc. 27-3 at ¶¶ 5–6; *Lindberg* Doc. 20-3 at ¶¶ 5–6. Preferred has pointed to no facts or defenses likely to raise complicated individual damages issues. And in any event, "the need for individualized proof of damages alone will not defeat class certification." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003) (collecting cases). If there are any other individualized issues, the defendants have not raised them.

It is possible that as the parties obtain copies of the written contracts between Preferred and the class members, some individual issues may arise. But at this point, that is nothing more than speculation.

### 2. Superiority

"The superiority requirement ensures that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quoting Fed. R. Civ. P. 23(b)(3)). This inquiry looks at whether the class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (cleaned up). Superiority reflects the policy "at the very core" of class actions, which were designed "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relative paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* at 617 (cleaned up).

13

A class action is the superior method of litigation in this case. The matter involves a financial injury provable by business records and not a personal injury or death where a plaintiff would ordinarily have "a substantial stake in making individual decisions on whether and when to settle." *Amchem*, 521 U.S. at 616 (cleaned up). The class members will benefit by litigating their claims as a class, which will be more cost-efficient in this document-heavy case which already shows signs of developing discovery difficulties.

The extent and nature of other litigation already begun by or against the class members concerning this dispute also weighs in favor of class certification. Although there is a complaint pending against CBL in state court, neither Preferred nor Mr. Lindberg are defendants in that proceeding, CBL is in rehabilitation, and the case has been stayed. *See Lindberg* Doc. 11-2 at 2. It is unlikely that the plaintiffs could be made "more or less whole" through that proceeding. *See Gregory v. Finova Cap. Corp.*, 442 F.3d 188, 191–92 (4th Cir. 2006) (finding class action not superior where plaintiffs had potential to seek relief in bankruptcy court). There is no evidence that any class members have brought any other lawsuits against Preferred or Mr. Lindberg arising out of non-payment of commissions. *See Preferred* Doc. 27 at 16; *Lindberg* Doc. 20 at 18 n.10 (noting that while there are "various actions pending" against Mr. Lindberg, the plaintiffs "are not aware of a case of insurance agents or agencies suing for unpaid commissions on the same legal theories of this case").

With 2,500 proposed class members, efficiency weighs in favor of class-wide adjudication. *See Gunnells v. Healthplan Servs. Inc*, 348 F.3d 417, 432–33 (4th Cir. 2003). Litigating these claims in one forum would provide flexibility, control, and

14

Case 1:22-cv-00483-CCE-JEP   Document 44   Filed 12/21/22   Page 14 of 17

consistency that would otherwise not exist with individual litigation. *See* Fed. R. Civ. P. 23(b)(3)(C); *Gunnells*, 348 F.3d at 425. This is the type of case that will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural unfairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (cleaned up).

The last factor to consider is manageability, which often overlaps with predominance. *See Gunnells*, 348 F.3d at 430 (noting that when individual issues predominate "the case prove[s] unmanageable"). While there will no doubt be case management issues because many of the records are in the hands of third parties, those case management issues do not arise because of the class nature of the case. So long as the plaintiffs follow their proposed plan and their theories of recovery set forth here, the class management issues will not be complicated and are worth the efficiencies and benefits achieved.

**IV. Conclusion**

The plaintiffs have affirmatively met the requirements of Rule 23. The proposed class satisfies the numerosity, commonality, and adequacy of representation requirements, common questions predominate, and class-wide adjudication is the superior method to adjudicate these claims.

It is **ORDERED** that:

1. The plaintiffs' motions for class certification, No. 21-CV-914, Doc. 26, No. 22-CV-483, Doc. 19, are **GRANTED**, with modifications to the class definition.

15

2. The following class is **CERTIFIED**:

> All persons or entities who (a) at any point after June 27, 2019, through the present, (b) had a contract with Preferred Financial Corporation, LLC, related to Colorado Bankers Life Insurance Company policies, (c) earned commissions for the issuance, selling, or servicing of CBL policies, (d) but have not been paid those commissions on behalf of themselves and the agents acting on their behalf in breach of their contracts with Preferred Financial Corporation, LLC.

3. The following named plaintiffs are **APPOINTED** as class representatives:

    a. James Jordan

    b. CBS Insurance, Inc.

    c. Employers First Choice Insurance Services Inc.

    d. James Helbig

    e. Bret Fields

    f. Target, Inc.

    g. Lenny Miller

    h. Chris Benkendorf

    i. National Benefits Group Midwest LLC

    j. Michael Tolomei

    k. Thomas Fletcher

    l. Certified Financial Services Inc.

    m. America's Health Care / RX Plan Agency, Inc.

    n. Michael Nordquist

o. Consolidated Financial Group, LLC

    p. Benefits for America Insurance Services, Inc.

    q. Plan America Financial Services, Inc.

4. Milberg Coleman Bryson Phillips Grossman, PLLC and Maginnis Howard, PLLC, specifically Matthew E. Lee, Mark. R. Sigmon, Jeremy R. Williams, Jacob M. Morse, Edward H. Maginnis, and Karl S. Gwaltney are **APPOINTED** as class counsel.

5. The plaintiffs shall prepare a proposed class notice and share it with counsel for the defendants no later than January 3, 2023. The parties shall meet and confer and shall file a joint submission on class notice no later than January 13, 2023; the joint notice shall contain an agreed-upon proposed notice and brief in support or dueling proposed notices and briefs if the parties do not agree.

This the 21st day of December, 2022.

_____
UNITED STATES DISTRICT JUDGE